NATHANIEL WILLIAMS, AS PERMANENT TRUSTEE FOR THE CREDITORS OF JAMES WILLIAMS, AN INSOLVENT DEBTOR, PLAINTIFF IN ERROR, *v.* CHARLES OLIVER, ROBERT M. GIBBES, AND THOMAS OLIVER, EXECUTORS OF ROBERT OLIVER, AND JOHN GLENN, AND DAVID M. PERINE, TRUSTEES.

In 1839 a treaty was made between the United States and Mexico, providing for the "adjustment of claims of citizens of the United States on the Mexican Republic."

Under this treaty a sum of money was awarded to be paid to the members of the Baltimore Mexican Company, who had subscribed money to fit out an expedition against Mexico, under General Mina, in 1816. See the case of Gill *v.* Oliver's Executors, 11 Howard, 529.

The proceeds of one of the shares of this company were claimed by two parties; one as being the second permanent trustee of the insolvent owner of the share, and the other as being the assignee of the first permanent trustee.

The Court of Appeals of Maryland decided that the plaintiff, viz., the second permanent trustee, did not take the claim under the insolvent laws of Maryland.

This decision is not reviewable by this court, under the 25th section of the Judiciary Act; and the case is similar to that of Gill *v.* Oliver's Executors, 11 Howard, 529.

Nor does jurisdiction accrue in this case in consequence of the additional fact that the Legislature of Maryland passed a law curing certain defects in the assignment to Oliver, the validity of which law was drawn into question, as impairing the obligation of a contract; because, if there had been no such law, the decision of the State court would have been the same.

Williams, Trustee, *v.* Oliver et al.

The former decisions of this court respecting its jurisdiction under the 25th section of the Judiciary Act, examined and explained.

THIS case was brought up from the Court of Appeals of Maryland, by a writ of error issued under the 25th Section of the Judiciary Act.

It was a branch of the case of Gill *v.* Oliver's Executors, reported in 11 Howard, 529, although it differed from that case in some particulars, which will be mentioned. The history of the Baltimore Mexican Company was given in the report of that case, and need not be repeated.

James Williams was the owner of one of the shares of the company, and applied for the benefit of the Insolvent Laws of Maryland on the 24th of June, 1819. George Winchester was appointed provisional trustee, and gave bond as such; and James Williams conveyed and assigned to him, as provisional trustee, all his property whatever for the benefit of his creditors. On the 2d of August, 1819, Winchester executed a bond without security, reciting that he had been appointed permanent trustee, and the bond was conditioned for the faithful performance of his duties as such. The laws of Maryland required security to be given when such a bond was executed.

At March term, 1825, Baltimore County Court passed the following order:—

"*In Baltimore County Court, March Term,* 1825.

"In the case of James Williams, an Insolvent Debtor:

"Ordered by the court, that the trustee dispose of any part of the personal estate of the said insolvent debtor remaining unsold at public or private sale, as he may judge best.

"WM. H. WARD."

On the 2d of April, 1825, Winchester assigned to Robert Oliver the share in the Mexican Company belonging to Williams, and signed a receipt for $2,000 as the consideration for the sale.

Winchester having died, Nathaniel Williams, the plaintiff in error, was appointed permanent trustee of James Williams, the insolvent, on the 15th of November, 1841, and gave bond with security, as required by law.

In the report of the case of Gill *v.* Oliver's Executors, it was stated in what manner the money came into the hands of Glenn and Perine as trustees, and how it came to be deposited in court for claimants to make out their title.

On the 29th of January, 1842, Nathaniel Williams filed his petition, claiming the amount which belonged to the share of his insolvent, James Williams.

On the 9th of March, 1842, the Legislature of Maryland passed an act (December Session, 1841, chapter 309,) entitled " An act to confirm the titles of purchasers in the cases therein mentioned;" which act was passed on the memorial of Oliver's representatives, and was alleged to cure the defects resulting from Winchester's assignment without his having given security upon his bond as permanent trustee.

On the 2d of May, 1842, the executors of Oliver and the trustees filed their answer to the petition of Nathaniel Williams. They claimed the share of James Williams on two grounds: 1st, under the purchase from Winchester; 2d, because the award of the commissioners was a full and complete bar of all right and title on the part of Nathaniel Williams.

On the 5th of December, 1846, Baltimore County Court decreed in favor of the executors of Oliver, holding the act of 1841 to be constitutional. On the second point the court decided that the award of the commissioners was not conclusive.

Williams prosecuted an appeal to the Court of Appeals of Maryland.

At June term, 1843, the Court of Appeals affirmed the decree of the County Court, three judges sitting. One of them, Judge MARTIN, filed the following reasons, viz.:

I think that George Winchester is to be considered, upon the facts exhibited in this record, as duly and legally appointed the permanent trustee of James Williams; that the sale by him of the shares in controversy to Robert Oliver, was fairly and _bonâ fide_ made within the meaning of the act of Assembly of 1841, ch. 309; and that that statute being, in my opinion, neither repugnant to the Constitution of the United States nor the Constitution of the State of Maryland, is to [be] regarded as a valid exercise of legislative power.

The other two judges, viz., Chief Justice DORSEY and Judge SPENCE, stated that the grounds upon which they affirmed the judgment were, first, the reasons assigned by the majority of this court for the reversal of the decree in Oliver's Executors et al. v. Gill, Permanent Trustee of Goodwin; and because, under the proceedings based on, or originating from, the insolvent petition of James Williams and the act of Assembly applicable thereto, Robert Oliver acquired a valid title to all the interest of said James Williams in the fund in controversy.

The reasons assigned by the majority of the court for the reversal of the decree in Oliver's Executors et al. v. Gill, and which are adopted as above and made part of the reasons for the decision given in the present case of Williams, Trustee, v. Oliver's Executors, were published in the report of the case of Gill v. Oliver's Executors, in 11 How. 529. They are here repeated:

10*

"The majority of this court, who sat in the trial of this cause, (and by which was decreed the reversal of the decree of the County Court,) at the instance of the solicitors of the appellees, briefly state the following as their reasons for such reversal: They are of opinion that the entire contract, upon which the claim of the appellees is founded, is so fraught with illegality and turpitude as to be utterly null and void, and conferring no rights or obligations upon any of the contracting parties, which can be sustained or countenanced by any court of law or equity in this State or of the United States. That it has no legal or moral obligation to support it, and that, therefore, under the insolvent laws of Maryland, such a claim does not pass to or vest in the trustee of an insolvent petitioner. It forms no part of his property or estate, within the meaning of the legislative enactments constituting our insolvent system. It bears no analogy to the cases decided in Maryland, and elsewhere, of claims not recoverable in a court of justice, which, nevertheless, have been held to vest in the trustees of an insolvent or the assignees of a bankrupt. In the cases referred to, the claims, as concerned those asserting them were, on their part, tainted by no principle of illegality or immorality; on the contrary, were sustained by every principle of national law and natural justice, and nothing was wanting to render them recuperable but a judicial tribunal competent to take cognizance thereof. Wholly dissimilar is the claim before us. Such is its character, that it cannot be presented to a court of justice but by a disclosure of its impurities; and if any thing is conclusively settled, or ought to be so regarded, it is that a claim, thus imbued with illegality and corruption, will never be sanctioned or enforced by a court either of law or equity.

"Entertaining this view of the case, it is unnecessary to examine the various minor points which were raised in the argument before us."

These reasons, as has been before remarked, are made applicable to the present case of Williams v. Oliver's Executors.

Williams sued out a writ of error and brought his case up to this court.

It was argued by *Mr. Dulany* and *Mr. Schley*, for the plaintiff in error, and *Mr. Campbell* and *Mr. Johnson*, for the defendants in error.

The counsel for the plaintiff in error contended for the following positions:

1. The record presents a case, within the appellate jurisdiction of this court, under the provisions of the 25th section of the Judiciary Act.

In support of the jurisdiction claimed, two grounds were assumed: 1st. The effect of the treaty with Mexico, and the effect of the act of Congress of the 12th of April, 1840, and the effect of the award, as establishing the amount and validity of the claim of the Mexican Company of Baltimore, were all necessarily involved in the decision of the case, if the decree is to be considered as based, in any degree whatever, on the imputed turpitude of the contract of said company with General Mina: 2d. The validity of the act of the General Assembly of Maryland, (act of 1841, ch. 309,) was drawn in question, on the ground of its alleged repugnancy to the Constitution of the United States, and its validity was maintained by the Court of Appeals. The following authorities were relied on: Crowell v. Randell, 10 Pet. 392, and the various cases referred to, and commented on, in the opinion in that case; Scott v. Jones, 5 How. 376, and the cases cited in the opinion in that case; Smith v. Hunter, 7 How. 744.

2. The imputed turpitude in the original contract of said Mexican Company with General Mina, even if such turpitude at any time attached to the contract, was not a ground which the Court of Appeals was at liberty to assume as the basis of their said decree. In doing so, they refused to give effect to an award based on the said treaty and said act of Congress. The right to receive the money was conclusively established. The only open question properly before that court was this, Who was entitled to the share accruing in right of said insolvent? The following authorities were relied on: Comegys v. Vasse, 1 Pet. 193; Frevall v. Bache, 14 Pet. 95; De Valangin's adm'rs. v. Duffy, 14 Pet. 291.

3. Apart from this notion of original turpitude, the claim vested in the permanent trustee of the insolvent, for the benefit of his creditors. Plater v. Scott, 6 Gill & Johns. 119; Stevens v. Bagwell, 15 Ves. 139; Comegys v. Vasse, 1 Pet. 193; Wheat. International Law, 56–63.

4. Independently of the act of 1841, the representatives of Robert Oliver had no right to this share, which could have been enforced in any tribunal of law or equity. The Insolvent Laws of Maryland, and particularly the act of 1808, chap. 71, sec. 3; Winchester, Trustee of Williams, v. Union Bank, 2 Gill & J. 73; Winchester, Trustee of Gooding, v. Union Bank, Id. 79; Glasgow v. Sands, 3 Id. 96; Glenn v. Karthaus, 4 Id. 385; Kennedy v. Boggs, 5 H. & J. 408; Brown v. Brice, 2 H. & G. 24; Williams v. Ellicott, 6 H. & J. 427.

5. The act of 1841, chap. 309, is repugnant to the tenth section of the first article of the Constitution of the United States. It is a law which, in its application to this case, impairs the obligation of a contract.

In the discussion of this point, it was insisted that it impairs the obligation of the original contracts of the insolvent with his various creditors; that it impairs the obligation of the bond given by Mr. Winchester as provisional trustee; that it impairs the rights of creditors, as *cestuis que trust*, and the rights of the plaintiff in error as permanent trustee, under the deed of trust to Mr. Winchester, as provisional trustee; that it also impairs, as to the creditors, the obligation of the bond of the plaintiff in error as permanent trustee. It will also be insisted that the plaintiff in error, on his appointment as permanent trustee, and his qualification, by filing an approved bond, became entitled by law to his commission on the assets composing the estate of the insolvent, and which vested in him, on his qualification as permanent trustee, and also deprived him of his right to allowance out of said estate, for his necessary disbursements; and that such, his right, is based on contract, within the true interpretation of the said section of said article of the Constitution; and that said act, as to him, is unconstitutional and void, as it does not save his commission nor make provision for payment of his disbursements. In the discussion of this point, the following authorities were relied on: Bronson *v.* Kinzie, 1 How. 311; Green *v.* Biddle, 8 Wheat. 1; McCracken *v.* Hayward, 2 How. 608; Gantley's Lessee *v.* Ewing, 3 How. 707; Cook *v.* Moffatt, 5 How. 295; Planters' Bank *v.* Sharp, 6 How. 318, and the cases cited in the opinion in that case; 12 Wheat. 311, 312; Rogers *v.* Wright, 9 G. & J. 184. The following cases were referred to for illustration, and as showing, by analogy, the rights which attached to the claims of creditors on the application of the insolvent: Scott *v.* Jones, 4 Clarke & Fin. 397, 398; Freake *v.* Cranefield, 3 Mylne & Craig, 499, and in 14 Eng. Cond. Ch. Rep. 500; Welch *v.* Stewart, 2 Bland, Ch. Rep. 41; Post *v.* Mackall, 3 Id. 498. It was also insisted, in the discussion of this point, that the said act, in its application to this case, impaired the obligation of the contract of sale made by said insolvent, before his application, to the firm of Stump & Williams, of the one half of his said share; and that the said act, as to the representatives of Stump & Williams, is unconstitutional and void. Mitford *v.* Mitford, 9 Ves. 87, and notes; Wright *v.* Morley, 11 Ves. 17; Dyer *v.* Pearson, 3 Barn. & Cress. 38, in 10 Eng. C. L. Rep. 13; 2 Story's Eq. Jur. § 1411, 1038, 1040 b, 1044; E. & S. Kip *v.* The Bank of New York, 10 Johns. 63; Muir *v.* Schenck, 3 Hill, 228.

The counsel for the defendant, in error presented the following points:

1st. The decision below turns upon two grounds, each of

which is conclusive of the case, and the second, to wit, that "under the proceedings based on or originating from the insolvent petition of Williams and the act of Assembly applicable thereto, Oliver acquired a valid title to all the interest of James Williams in the fund in controversy," resting upon the conjoint operation of the sale made by order of court and the act of Assembly, is not subject to revision here, because the effect of the sale so made was exclusively for the court below, and it does not appear to what extent that consideration affected the decree of the Court of Appeals.

2. The petition of the plaintiff in error does not specially set up or claim any right or title under the convention with Mexico, or the act of Congress, or the award made in pursuance of them, nor does the court below decide against any such right or title. The petition denies the title of Oliver's executors, and rests its demands on the official character of the plaintiff in error, as giving him title under the insolvent laws of Maryland, and on the trusts of the deed of the 8th May, 1841, as constituting them trustees for him being so entitled, and the decision of the State court turns altogether on its construction of those insolvent laws, which confer, in its judgment, no title on the plaintiff in error. Udell v. Davidson, 7 How. 771; Smith v. Hunter, 7 How. 743; Maney v. Porter, 4 How. 55; McDonogh v. Millaudon, 3 How. 705; Downes v. Scott, 4 How. 502; Kennedy v. Hunt, 7 How. 593; Fulton v. McAffee, 16 Pet. 149; Coons v. Gallagher, 15 Pet. 18; McKenney v. Carroll, 12 Pet. 66; Crowell v. Randell, 10 Pet. 392; Montgomery v. Hernandez, 12 Wheat. 129; Williams v. Norris, 12 Wheat. 117; Hickie v. Stark, 1 Pet. 98; Mathews v. Zane, 7 Wheat. 206; Owings v. Norwood, 5 Cranch, 344; Smith v. the State of Maryland, 6 Cranch, 286; Plater v. Scott, 6 Gill & Johns. 116; Hall v. Gill, 10 Gill & Johns. 325; 1 U. S. Stat. at Large, 384.

3. The decision of the State court, that Williams's claim did not pass to his permanent trustee on account of its illegality and turpitude, does not conflict with the award, or the treaty or act of Congress under which the award was passed, because the commissioners were empowered to decide nothing but the liability of Mexico for the claims set up against that republic, which were admitted by Mexico prior to the treaty, but long after Williams's application; and because the said convention or treaty of 1839 and the proceedings under it cannot affect the question, whether the insolvent laws of Maryland did or did not operate in 1819 to transfer the claim to the trustee of Williams, the force and effect of these laws at the time when Williams applied, being the question before the court below.

Comegys *v.* Vasse, 1 Pet. 212; Sheppard *v.* Taylor, 5 Pet. 713; Frevall *v.* Bache, 14 Pet. 97; Maryland Acts of 1805, ch. 110, and 1816, ch. 221; Hall *v.* Gill, 10 Gill & Johns. 325.

4. By the well-settled law of Maryland, as applicable to Williams's and all other applications for the benefit ·of the insolvent laws at that period, (1819,) the plaintiff in error, as trustee of Williams, under his application, took title to no property, rights, or claims of Williams, the insolvent, but such as he had at the date of his application. At that period, Williams had no possible right or.claim against the government of Mexico, which did not come into existence for several years afterwards, nor against the then existing government of Spain in Mexico, which Mina's expedition was designed to overthrow; and the only alleged or possible claim he, (Williams,) then had was against Mina, under Mina's contract with the· Mexican Company; and this contract with Mina, as the State court has declared·by its decision, was illegal, and created no right or claim in Gooding which could .or did pass to his trustee under his said application in 1819. The decision of the State Court, therefore, involved but two questions, the· first of which was, whether said contract with Mina vested any rights in Williams, at the date of his application.in 1819, which passed to his trustee; and the second, whether the treaty and award, allowing as against Mexico the claim of the Mexican Company, under its said contract with Mina, had any.such operation or retrospect, as to that contract, as to validate it in Maryland as between the original parties, and to validate it *ab initio*, so as to vest in the trustee by retroactive rights and claims under that contract, which had no legal existence at the period of Williams's application. The first question the defendants in error will maintain, is conclusively established by the decision of the State court, and is not open to inquiry here, as it involves nothing but the decision of the Maryland Court upon a Maryland contract, as to the rights created by it, and the transfer of those rights, in 1819, to the trustee of the insolvent. The second, and, as the defendants will maintain, the only possible question open here, will be as to the operation of the treaty and award. And, as the State court has not expressed any specific opinion as to the treaty, or any right or title set up or claimed under it, the jurisdiction can only be maintained, if at all, by establishing that such a right or title was involved in the decision of the question, and that the treaty did so retroact as to validate said contract, *ab initio*, and vest in the trustee of 1819 the rights given by that contract, which rights, so vested in the trustee, the decision of the State court denied him. · And the defendants in error will maintain that, even if there be any such right, title,

or privilege specially set up or claimed under the treaty, as to give jurisdiction, which they deny, yet the treaty could not have, and was not intended to have, any such operation or retrospect. They will insist that the treaty and award under it had and could have no other effect than to establish the liability of Mexico to pay that claim under the treaty, and settled nothing but the validity of that claim against Mexico; and that, by the award made under it to Glenn and Perine, the trustees of the defendants, the defendants have the only right or title set up, claimed, or obtained under the treaty, which the plaintiff in error can controvert only by showing that they were entitled to the claim thus allowed to the defendants, and that the treaty and award settled no rights as between the claimants, but merely the obligation of Mexico to pay the claim.    They will further insist that the question, whether the original contract between Mina and the Mexican Company gave Williams any rights which passed to his trustee in 1819, was a question of Maryland law upon a Maryland contract, upon which Mexico's subsequent recognition or agreement to pay that claim, as due by herself, could have no influence; that Mexico's subsequent agreement to pay the claim herself had no bearing upon the question, as to what were the rights of Williams in Maryland under the original contract between Mina and the Mexican Company; and that the express waiver by Mexico, or even by the Spanish government which she overthrew, or the objection of illegality as far as she was concerned, could not affect the question of the validity of the original contract, in Maryland and under the laws of Maryland, and, above all, could not retrospect so as to repeal the laws of Maryland, by validating that original contract, *ab initio*, and passing the rights under it to the trustee of 1819. And, as the result of the whole, therefore, the defendants in error will maintain, that the decision of the State Court has conclusively established the original invalidity of the contract, and that the trustee took no rights under it; and that the treaty, if there be any question raised under it, gave the plaintiff in error no right, title, or privilege which can affect that decision, or was denied by the State court.    Milne *v.* Huber, 3 McLean, 102; and authorities under 1st and 2d points.

5. The act of Assembly of 1841, ch. 309, does not impair the obligation of contracts.    Satterlee *v.* Mathewson, 2 Pet. 414; Watson *v.* Mercer, 8 Pet. 110.

Mr. Justice NELSON delivered the opinion of the court.

This case is not distinguishable from the case decided at the last term of Gill *v.* Oliver's Executors, and which was dismissed for want of jurisdiction.

Williams, Trustee, *v.* Oliver et al.

It is reported in 11 How. 529.   That case involved the right to the share of Lyde Goodwin as a member of the "Baltimore Mexican Company" in the fund that had been awarded to the members of that company by the commissioners under the convention of 1839 with Mexico.   Gill claimed it as permanent trustee under the insolvent laws of Maryland, the benefit of which Goodwin had obtained in 1817, on the assignment of all his property for the use of his creditors.

The executors of Oliver claimed the right of Goodwin to this fund under an assignment made by himself 30th May, 1829.

The money awarded by the commissioners to this company under the treaty, had, by the agreement of all parties claiming an interest in the same, been deposited in the Mechanics' Bank of Baltimore, to be distributed according to the rights of the respective parties claiming it.

The Court of Appeals of Maryland decided against the right of Gill, as the permanent trustee of Goodwin, under the insolvent proceedings, and in favor of the right of the executors of Oliver.

The case was brought here by writ of error for review, and was dismissed as we have stated for want of jurisdiction.

The Court of Appeals of Maryland had decided against the right of Gill, on the ground that the contract made by the "Baltimore Mexican Company" with General Mina, in 1816, by which means were furnished him to carry on a military expedition against the territories and dominions of the King of Spain, a foreign prince with whom the United States were at peace, was in violation of our Neutrality Act of 1794, and consequently illegal and void, and could not be the foundation of any right of property, or interest existing in Goodwin in 1817, the date of the insolvent proceedings, and hence, that no interest in the subject-matter passed to the permanent trustees, setting up a title under them.

After the revolutionary party in Mexico had achieved their independence, and about the year 1825 the public authorities, under the new government, recognized this claim of the Baltimore Company, as valid and binding upon it, and as such it was brought before the board of commissioners, under the convention of 1839, and allowed.

It was not denied on the argument, and, indeed, could not have been successfully, that the contract with General Mina in 1816, was illegal and void, having been made in express violation of law : and hence that no interest in, or right of property arising out of it, legal or equitable, could pass, in 1817, the date of the insolvent proceedings of Goodwin, to the trustee, for the benefit of his creditors.   But, it was urged, that the subsequent

recognition and adoption of the obligation by the new government, had relation back, so as to confirm and legalize the original transaction, and thereby give operation and effect to the title of the trustee at the date mentioned.

And upon this ground it was insisted that the decision of the court below, denying the right of Gill, the permanent trustee, was a decision against a right derived under the treaty and award of the commissioners, which therefore brought the case within the 25th section of the Judiciary Act.

Undoubtedly, upon this aspect of the case, and assuming that there was any well-founded ground to be found in the record for maintaining it, jurisdiction might have been very properly entertained; and the question as to the effect of the recognition of the obligation by Mexico, and award under the treaty in pursuance thereof, upon the right claimed by the trustee under the insolvent proceedings, examined and decided. The decision below, in this aspect of the case, must have involved the effect and operation of the treaty, and award of the commissioners under it.

But, a majority of the court were of opinion that no such question existed in the case, or was decided by the court below; and that the only one properly arising, or that was decided, was the one growing out of the contract with General Mina of 1816, and of the effect and operation to be given to it under the insolvent laws of Maryland.

The money awarded to the Mexican Company was a fund in court, and had been brought in by the consent of all parties concerned, for distribution according to their respective rights. The plaintiff in error claimed the share of Goodwin, under the insolvent proceedings of 1817, as trustee for the creditors through the contract with Mina — the defendants by virtue of an assignment from Goodwin himself in 1829, after Mexico had recognized and acknowledged the claim as valid. The money had been awarded to certain persons " in trust for whom it may concern," without undertaking to settle the rights of the several claimants. The court, in giving effect and operation to the insolvent laws of Maryland, as to the vesting of the property and estate of the insolvent in the hands of the trustee, for the benefit of the creditors, held, that no interest or right could be claimed under them through the contract of 1816, but that the right of Goodwin to the fund passed by his assignment in 1829 to the defendants.

Mr. Justice Grier, in delivering the opinion of the majority of the court, speaking of that decision, observes, that in deciding the question, the courts of Maryland have put no construction on the treaty or award asserted by one party to be the true one, and denied by the other. It was before them as a fact only, and

not for the purpose of construction. Whether this money paid into the court under the award, and first acknowledged by Mexico as a debt in 1825, existed as a debt transferable by the Maryland insolvent laws in 1817, or whether it, for the first time, assumed the nature of a *chose in action* transferable by assignment after 1825, when acknowledged of record by Mexico, and passed by the assignment of Lyde Goodwin to Robert Oliver, was a question wholly *dehors* the treaty and award, and involving the construction of the laws of Maryland only, and not of any treaty, or statute, or commission, under the United States. And Mr. Justice Woodbury, who dissented on the question of jurisdiction, observes, that the claim, so far as it regards the enforcement of the treaty with Mexico, does not seem to have been overruled in terms by the State Court. That court did not decide that the treaty was corrupt or illegal, or in any way a nullity, when they held that the original contract violated the laws of neutrality. So far, too, as regards the award made by the commissioners, that the Baltimore Mexican Company, and their legal representatives, had a just claim under the treaty for the amount awarded, it was not overruled at all.

Again, he observes, that all must concede, that the State court speaks in language against the Mina contract alone as illegal, and in terms do not impugn either the treaty or the award; and it is merely a matter of inference or argument that either of these was assailed, or any right properly claimed under them overruled. But it is true the court held that Oliver's executors, rather than the appellant, were entitled to the fund furnished by Mexico, and long subsequent to Mina's contract; but in coming to that conclusion, they seem to have been governed by their own views as to their own laws and the principles of general jurisprudence. The treaty or award contained nothing as to the point whether Gill or Oliver's executors had the better right to his share, but only that the Mexican Company and their legal representatives should receive the fund. This last the court did not question.

The decision of the court below, therefore, not involving the validity of the treaty, or award of the commissioners, or lawfulness or character of the fund, but simply the right and title to the respective shares claimed in it, after the fund had been paid over by the government, and brought into court for distribution according to the agreement of all concerned, and which distribution depended upon the laws of the State, a majority of the court, taking this view of the case, held, that there was a want of jurisdiction, and dismissed the writ of error; and that the decision, whether right or wrong, could not be the subject of review under the 25th section of the Judiciary Act, as it involved

no question, either directly or by necessary intendment, arising upon the treaty or award, or connected with the validity of either; and if this court were right in the view thus taken of the case, there can be no doubt as to the correctness of the conclusion arrived at. A different view of the case might, of course, lead to a different conclusion.

Now, in the case before us, the plaintiff in error claims the share of John Gooding, one of the members of the Mexican Company, as permanent trustee under the insolvent laws of Maryland, having been appointed 29th January, 1842, Gooding having taken the benefit of these acts, and assigned his property for the benefit of the creditors as early as 1819.

George Winchester had been previously appointed provisional trustee on the 23d June, 1819, to whom all property had been assigned, and on the 2d May, 1823, had been appointed permanent trustee, and gave a bond for the faithful execution of his duties without surety, and on the 2d April, 1825, sold the interest of Gooding in this share to Robert Oliver, under an order of sale made by the Baltimore County Court, having jurisdiction in the matter, for the consideration of $2,000. And in 1841 the Legislature of Maryland passed a law confirming this sale, a doubt having been suggested as to its validity, for want of a surety to the official bond of the trustee.

In this state of the case the Court of Appeals of Maryland held, that the interest of Gooding in the Mexican contract did not pass, under their insolvent laws, to the plaintiff in error as permanent trustee, for the reasons assigned in the previous case of Gill *v.* Oliver's Executors. And that if it did or could have passed under these laws, it passed to Winchester, the previous trustee, in connection with the confirming act of the legislature of 1841.

It is apparent, therefore, if the decision in the case of Gill.*v.* Oliver's executors involved no question that gave to this court jurisdiction to revise it here, as has already been decided, none exists in the case before us; for, as it respects the question of jurisdiction, the two stand upon the same footing, and involve precisely the same principles.

The counsel for the plaintiff in error sought to distinguish this case from the previous one, and to maintain the jurisdiction of the argument, upon the ground that the act of the Legislature of Maryland of 1841, confirming the authority of Winchester, the permanent trustee, was in contravention of a provision of the Constitution of the United States, as a "law impairing the obligation of contracts."

But, admitting this to be so, (which we do not,) still the admission would not affect the result. For the decision upon the

previous branch of the case denied to the plaintiff any right to, or interest in, the fund in question, as claimed under the insolvent proceedings, as permanent trustee, and hence he was deemed disabled from maintaining any action founded upon that claim.

It was of no importance, therefore, as it respected the plaintiff in the distribution of the fund, whether it was rightfully or wrongfully awarded to Oliver's executors. He had no longer any interest in the question.

In order to give jurisdiction to this court to revise the judgment of a State court, under the 25th section of the Judiciary Act, a question must not only exist on the record, actually or by necessary intendment, as mentioned in that section and the decision of the court as there stated, but the decision must be controlling in the disposition of the case; or, in the language of some of the cases on the subject, "the judgment of the State court would not have been what it is, if there had not been a misconstruction of some act of Congress, or a decision against the validity of the right, title, privilege, or exemption set up under it." 3 Pet. 292, 302. Or, as stated by Mr. Justice Story, in Crowell v. Randell, (10 Pet. 392,) where he reviewed all the cases, it must appear "from the facts stated by just and necessary inference, that the question was made, and that the court below must, in order to have arrived at the judgment pronounced by it, have come to the very decision of that question as indispensable to that judgment." And in a recent case, (5 How. 341,) following out the doctrine of the previous cases, "It is not enough that the record shows that the plaintiff in error contended and claimed that the judgment of the court impaired the obligation of a contract, and violated the provisions of the Constitution of the United States, and that this claim was overruled by the court; but it must appear by clear and necessary intendment, that the question must have been raised, and must have been decided, in order to induce the judgment."

It is not intended, nor to be understood, from these cases, that the question, thus material to the decision arrived at, must be confined exclusively and specially to the construction of the treaty, act of Congress, &c., in order to give the jurisdiction; as this would be too narrow a view of it. Points may arise growing out of, and connected with the general question, and so blended with it as not to be separated, and, therefore, falling equally within the decision contemplated by the 25th section. The cases of Smith v. the State of Maryland, 6 Cranch, 281, and Martin v. Hunter's Lessee, 1 Wheat. 305, 355, afford illustrations of this principle.

Now, as the decision of the question involving the right and

title of the plaintiff in error to Gooding's interest in this fund under the insolvent proceedings was against him in the court below, and was one which, in our judgment, involved only a question of State law, and, therefore, not the subject of revision here, and was conclusive upon his rights, and decisive of the case, it follows that we have no jurisdiction within the principle of the cases to which we have referred; for the determination of the court upon the validity of the act of the legislature of 1841 in no way controlled the judgment at which the court arrived, as respected the plaintiff. That turned upon the decision as to the right of the plaintiff to the fund under the insolvent proceedings, as permanent trustee of Gooding, and whatever might have been the opinion of the court upon the other question, the result of their judgment would have been the same.

For the reason, therefore, that this case falls directly within the decision of Gill v. Oliver's Executors, and is not distinguishable from it, the case must take the same direction, and be dismissed for want of jurisdiction.

## Order.

This cause came on to be heard on the transcript of the record from the Court of Appeals of the State of Maryland for the Western Shore, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that this cause be, and the same is hereby, dismissed, for the want of jurisdiction.