## BORGMEYER, Administrator, *v.* IDLER.

ERROR TO THE COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 582. Submitted October 15, 1895. — Decided October 28, 1895.

*Colorado Central Mining Co.* v. *Turck,* 150 U. S. 138, affirmed and applied to this case upon the points: (1) that when the jurisdiction of a Circuit Court of the United States is invoked upon the ground that the determination of the suit depends upon some question of a Federal nature, it must appear, at the outset, from the pleadings, that the suit is one of that character of which the Circuit Court could properly take cognizance at the time its jurisdiction was invoked; and (2) that when the jurisdiction of a Circuit Court is invoked solely on the ground of diverse citizenship, the judgment of the Circuit Court of Appeals is final, although another ground for jurisdiction in the Circuit Court may be developed in the course of subsequent proceedings in the case.

The mere fact that the matter in controversy in an action is a sum of money received by one of the parties as an award under a treaty with a Foreign Power, providing for the submission of claims against that Power of arbitration, does not in any way draw in question the validity or the construction of that treaty.

BORGMEYER, administrator of the estate of Alexander Cha-taing, deceased, under letters granted September 14, 1892, brought an action September 15, 1892, against William Idler and John W. Hazeltine, administrators *de bonis non* of the estate of Jacob Idler, deceased, in the Circuit Court of the United States for the Eastern District of Pennsylvania, averring that he was a citizen of the State of New Jersey and that the defendants were citizens of the State of Pennsylvania.

Plaintiff's statement of claim or declaration, filed September

22, alleged the recovery by Jacob Idler, after prolonged litigation, of a judgment against the Republic of Venezuela in September, 1832, and that throughout the litigation Chataing was Idler's attorney and counsel, and that he had advanced Idler the sum of 4400 pesos. The statement then continued thus : "Thereupon, after obtaining said judgment, the said Jacob Idler executed in favor of said Chataing, in consideration of his then past services and advances, two promises in writing, expressed in the Spanish language, a copy of each of which, bearing date at Caracas, together with a translation of each, is hereby appended, marked respectively B and A. By the first of these, dated September 25, 1832, the said Jacob Idler promised to pay to the said Chataing ten per cent (10%) of the amount of said judgment at such time and in such manner as Venezuela should make payment upon the latter ; by the second, dated January 9, 1833, he further promised to repay to the said Chataing, out of the first money which should be paid by Venezuela upon said judgment, the said four thousand four hundred (4400) pesos. After very great and unlooked for delays upon the part of Venezuela in satisfying the said judgment, it was made the basis of awards against the Republic in favor of the said Jacob Idler, and the defendants, by certain mixed commissions, authorized thereto by the United States and that Republic in the years 1868 and 1890 ; and under said awards, since September 3, 1890, and up to the present date, Venezuela has paid to, and to the order of, the said Jacob Idler, or the defendants, by instalments as awarded, a portion of the said judgment, deducting from which portion certain legitimate expenses by the latter incurred in obtaining said awards, there has as yet come to the hands of said Jacob Idler or the defendants, in all, ninety-three thousand nine hundred and eighty-six dollars and sixty-five cents ($93,986.65) for principal and interest ; " and plaintiff claimed to recover a commission of ten per cent under the paper of September 25, 1832, and a balance due on the advance of 4400 pesos.

Defendants filed an affidavit of defence, setting up as to the ten per cent commission, that the judgment was annulled in

1839 by the highest court in Venezuela and no payment had ever been made thereon ; that Chataing died August 30, 1836, and Idler employed other agents to endeavor to obtain payment of the claim, and that after Idler's death, May 26, 1856, William Idler continued these efforts and employed other agents and counsel; that an award was made in favor of Idler and his associates in 1868 by a mixed commission created under a treaty of 1866, and that in 1871 there was paid by the Department of State of the United States, under this award, $17,696.98, and in 1876 the further sum of $20,225.12 ; that by a treaty of June 4, 1889, all the awards were reopened and a mixed commission appointed under that treaty which heard and determined, in the city of Washington in 1890, the validity of the claim of Idler and his associates *de novo;* that no claim was made before this commission for or on account of any interest in this award by Chataing or his estate ; that the commission reopened the award made under the treaty of 1866 and heard and decided as to the validity of the claim, reduced the award, and made a division between all who, the court decided, had interests therein; that from 1833 to 1891 no claim or demand of any nature was made by Chataing in his lifetime, nor after his death, against Idler in his lifetime or his associates ; nor was any claim or demand of any nature or kind against the estate of Idler, or against his associates, made by the estate of Chataing or any person for his estate or heirs, for or on account of the claims in this suit until 1891, a period of fifty-eight years ; and defendants set up the bar of the statute of limitations, payment, etc.

At the trial the Circuit Court directed a verdict for plaintiff, reserving all the questions of law, and subsequently entered judgment in favor of plaintiff on the verdict. Defendants took the case on error to the Circuit Court of Appeals for the Third Circuit, which reversed the judgment of the Circuit Court and entered judgment for the defendants, notwithstanding the verdict, on the points of law reserved at the trial. The Court of Appeals held as to the claim for commission that the record disclosed the fact that Idler's judgment in Venezuela had been annulled by the courts of that country, and that

nothing had been paid by Venezuela on the footing of that judgment, and the court observed:

"Idler's judgment having thus been swept away, the consideration for his promise to pay to Chataing a commission thereon wholly failed. The event upon which the commission was to be paid never occurred. Very certain is it that nothing was paid by Venezuela to Idler or to the personal representatives on the footing of the judgment. To apply then the writing of September 25, 1832, to the state of affairs brought about more than half a century afterwards by the award made by a mixed commission acting under an international treaty would be a perversion of the paper, and would work the greatest injustice to the estate of Idler. The whole situation had radically changed without his fault. His judgment had utterly failed him. The allowance of the claim was ultimately secured by the action of an independent tribunal proceeding upon original grounds. The favorable result was due to the long continued personal exertions of Idler and his associates and the services at a vast expense of other agents and attorneys. All this the evidence shows. To the result neither Chataing nor his personal representatives contributed aught.

"We do not consider it a matter of any moment that in pressing their claim before the mixed commissions Idler's administrators relied upon the Venezuelan judgment of 1832. That judgment was a part of the complicated transactions between their intestate and the government of Venezuela. It perhaps afforded some evidence of the correct amount of the indebtedness in dispute. Nor is it important how the majority of the commissioners may have regarded that judgment. Neither its correctness nor its existence was recognized by either of the treaties. The mixed commissions were to decide with reference to the merits of all claims submitted to them. The opinion filed on behalf of the majority of the last commission shows that the Idler claim was investigated and sustained by them upon its original merits. They were at liberty, had the facts so warranted, to have found against the claim altogether. That they awarded the face amount of

the judgment with interest is of no consequence. The reasons for their award are immaterial here. The important fact is that whatever moneys Venezuela paid on the Idler claim were paid on the awards of the mixed commissions and not otherwise. Construing the paper of September 25, 1832, with reference to its terms, its subject-matter, and the situation of the parties, we conclude that no payment or satisfaction of the judgment therein recited was ever made or realized within the true intent of the parties, and that the stipulated commission to Chataing never became payable. It follows, therefore, that the reserved questions of law appertaining to this branch of the case should have been decided in favor of the defendants."

As to the claim for a balance of the 4400 pesos and interest, the Circuit Court of Appeals held that the proof of its actual payment by Idler in his lifetime was remarkably full considering its antiquity, and that its non-assertion for over fifty years was inexplicable except upon the hypothesis of full payment in the lifetime of Chataing, but that independently of the proof of payment, the presumption of payment arose after the lapse of twenty years, and that even on plaintiff's own view the moneys received in 1871 on the first award were in excess of the 4400 pesos, and consequently that presumption had operated against the debt before suit was brought. The opinions of the Circuit Court and of the Circuit Court of Appeals are reported in 65 Fed. Rep. 910. A writ of error to this court having been allowed, the cause came on on a motion to dismiss or affirm.

*Mr. M. Hampton Todd* and *Mr. Edward H. Weil* for the motion.

*Mr. Samuel F. Phillips, Mr. Frederick D. McKenney,* and *Mr. Henry R. Edmunds* opposing.

Mr. CHIEF JUSTICE FULLER delivered the opinion of the court.

In *Colorado Central Mining Co.* v. *Turck,* 150 U. S. 138, we held that when the original jurisdiction of a Circuit Court of the United States is invoked upon the ground that the deter-

mination of the suit depends upon some question of a Federal nature, it must appear, at the outset, from the pleadings, that the suit is one of that character, of which the Circuit Court could properly take cognizance at the time its jurisdiction is invoked ; and that when the jurisdiction of a Circuit Court is invoked solely on the ground of diverse citizenship, the judgment of the Circuit Court of Appeals is final, although another ground for jurisdiction in the Circuit Court may be developed in the course of subsequent proceedings in the case. It was there said : " By the judiciary act of March 3, 1891, it is provided that the review by appeal, by writ of error, or otherwise, from existing Circuit Courts shall be had in this court, or in the Circuit Courts of Appeals thereby established, according to the provisions of the act regulating the same. The writ of error in this case was brought under section six of that statute, which provides that ' judgments or decrees of the Circuit Courts of Appeals shall be final in all cases in which the jurisdiction is dependent entirely upon the opposite parties to the suit or controversy being aliens and citizens of the United States or citizens of different States,' and also that ' in all cases not hereinbefore, in this section, made final there shall be of right an appeal or writ of error or review of the case by the Supreme Court of the United States where the matter in controversy shall exceed one thousand dollars besides costs.' 26 Stat. 826, 828, § 6, c. 517. If the judgment of the Circuit Court of Appeals for the Eighth Circuit was final, under the section in question, then this writ of error must be dismissed. And in order to maintain that the decision of the Circuit Court of Appeals was not final, it must appear that the jurisdiction of the Circuit Court was not dependent entirely upon the opposite parties being citizens of different States."

Applying these principles to the case at bar, it is apparent that this writ of error will not lie. The jurisdiction of the Circuit Court was invoked by the issue of summons September 15, 1892, followed by the filing of the statement of claim or declaration, September 22, 1892, and therefrom it appeared that the suit was one of which cognizance could be properly taken on the ground of diverse citizenship, and it did

not appear therefrom that jurisdiction was rested or could be asserted on any other ground.

By the fifth section of the act of March 3, 1891, appeals or writs of error from the District and Circuit Courts of the United States to this court were allowed, among other cases, " in any case in which the constitutionality of any law of the United States, or the validity or construction of any treaty made under its authority, is drawn in question," but it was not suggested in the summons and statement of claim that the validity or construction of any treaty made under the authority of the United States was drawn in question, and no such question was decided either by the Circuit Court or the Circuit Court of Appeals. It is unreasonable to contend that any question was raised directly touching the validity or construction of either of the treaties of Venezuela by plaintiff's statement of claim or by clear and necessary intendment therefrom, and, under the rule laid down in *Turck's case*, this writ of error must be dismissed. The jurisdiction of the Circuit Court depended entirely upon diverse citizenship when the suit was commenced, and to that point of time the inquiry must necessarily be referred. Had the case been brought to this court from the Circuit Court the writ of error could not have been entertained.

We do not think, indeed, that the validity or construction of either of the treaties was actually drawn in question, and the ground of the judgment really involved neither such validity nor construction.

The point was long ago settled in principle upon the record of a suit in a state court.

The twenty-fifth section of the judiciary act of September 24, 1789, c. 20, 1 Stat. 73, 85, provided that a writ of error would lie to a final judgment or decree in any suit, in the highest court of law or equity of a State in which a decision in the suit could be had, " where is drawn in question the validity of a treaty or statute of  .  .  .  the United States, and the decision is against their validity,  .  .  .  or where is drawn in question the construction of any clause of the Constitution, or of a treaty, or statute of, or commission held under the United

States, and the decision is against the title, right, privilege, or exemption specially set up or claimed by either party, under such clause of the said Constitution, treaty, statute, or commission."

In *Gill* v. *Oliver*, 11 How. 529, 545, on error to the Court of Appeals of Maryland, it was held, where an award had been obtained under a treaty with Mexico and both parties claimed under the award, that the introduction of the treaty and the award merely as part of the history of the case did not in any way involve the validity of the treaty or its construction and that the writ of error could not be maintained. See *Williams* v. *Oliver*, 12 How. 111; *Baltimore & Potomac Railroad* v. *Hopkins*, 130 U. S. 210, 225.

*Writ of error dismissed.*