ZIKOS v. OREGON R. & NAVIGATION CO.

(Circuit Court, E. D. Washington, E. D.   June 4, 1910.)

No. 1,394.

**1. MASTER AND SERVANT (§ 189\*)—WHO ARE "FELLOW SERVANTS"—SECTION FOREMAN AND CREW.**

A railroad section foreman and the members of the crew working under him are "fellow servants" within the rule of the federal courts.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 428; Dec. Dig. § 189.\*

For other definitions, see Words and Phrases, vol. 3, pp. 2716–2730; vol. 8, p. 7662.

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

**2. COMMERCE (§ 58\*)—POWER OF CONGRESS—REGULATION OF RAILROADS—EMPLOYER'S LIABILITY ACT.**

Employer's Liability Act April 22, 1908, c. 149, § 1, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), has not perpetuated the infirmities which rendered Act June 11, 1906, c. 3073, 34 Stat. 232 (U. S. Comp. St. Supp. 1909, p. 1148), unconstitutional.   Under the present statute a railroad company engaged in interstate commerce is liable to the extent therein provided to an employé injured while assisting in carrying on such commerce when the injury results from the negligence of a fellow servant, if such fellow servant is also engaged in interstate commerce.   The facts disclosed by the complaint do not make it necessary to decide whether, if injury should result through the negligence of an employé engaged in intrastate commerce, there would be a liability under the act.   The purpose to render a carrier engaged in interstate commerce liable to employés so engaged being apparent, the provisions are separable, whatever be the rule regarding an injury resulting to an interstate employé from the negligence of an employé not so engaged.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 58.\*]

**3. COMMERCE (§ 58\*)—POWER OF CONGRESS—INTERSTATE CARRIERS—LIABILITY TO EMPLOYÉS.**

Congress has authority under its constitutional power to regulate interstate commerce to prescribe rules of liability as between an interstate carrier and its employés in such interstate commerce in cases of injury to the employés while actually engaged in such commerce.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 58.\*]

**4. COMMERCE (§ 58\*)—EMPLOYER'S LIABILITY ACT—EMPLOYÉ ENGAGED IN "INTERSTATE COMMERCE."**

A sectionhand working on the track of a railroad over which both interstate and intrastate traffic is moved is employed in "interstate commerce" within the meaning of Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), and within the protection of such act.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 58.\*

For other definitions, see Words and Phrases, vol. 4, pp. 3724–3731.]

**5. REMOVAL OF CAUSES (§ 10\*)—JURISDICTION OF FEDERAL COURT.**

The jurisdiction of a federal court in a cause removed from a state court must rest on that of the state court from which the removal was made.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 28; Dec. Dig. § 10.\*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. COURTS (§ 42*)—JURISDICTION OF STATE COURTS—RIGHTS CREATED BY FEDERAL STATUTE.

Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), does not attempt to delegate judicial power of the United States to state courts, in violation of article 3 of the Constitution but creates substantive rights not solely cognizable in the federal courts, but which may be availed of in any court of competent jurisdiction, state or federal.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 42.*]

7. COMMERCE (§ 58*)—POWER OF CONGRESS—EMPLOYER'S LIABILITY ACT.

Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), conceding it to be otherwise within the constitutional power of Congress to regulate interstate commerce, is not invalid because it results in establishing rules and measures of liability in cases to which it applies different from those which exist under the state laws in other cases arising from the relation of master and servant, nor because it gives the right of recovery in case of the death of an employé to different parties; but in cases to which it applies it is paramount and governs in the state as well as the federal courts.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 58.*)

8. STATUTES (§ 64*)—PARTIAL INVALIDITY—EMPLOYER'S LIABILITY ACT.

The provision of Employer's Liability Act April 22, 1908, c. 149, § 5, 35 Stat. 66 (U. S. Comp. St. Supp. 1909, p. 1173), making void any contract, rule, regulation, or device, the intent of which shall be to exempt any carrier from liability under the act, is clearly separable from the other provisions of the act, which are not involved in the question of its constitutionality.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58, 59; Dec. Dig. § 64.*]

9. CONSTITUTIONAL LAW (§ 70*)—EMPLOYER'S LIABILITY ACT—CONSTITUTIONALITY.

Whether or not Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), is effective to carry out the purpose intended, and thus promote interstate commerce, is a legislative and not a judicial question, which cannot affect the constitutional power of Congress to enact it.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132; Dec. Dig. § 70.*]

10. CONSTITUTIONAL LAW (§ 245*)—EQUAL PROTECTION OF LAWS—EMPLOYER'S LIABILITY ACT.

Employer's Liability Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), is not unconstitutional as denying the equal protection of the laws to the carriers affected thereby.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 702; Dec. Dig. § 245.*]

At Law. Action by Makes Zikos against the Oregon Railroad & Navigation Company. On demurrer to complaint. Demurrer overruled.

Birdseye & Smith, for plaintiff.

Ralph E. Moody (W. W. Cotton, Arthur C. Spencer, and Samuel R. Stern, of counsel), for defendant.

WHITSON, District Judge. Plaintiff, a citizen of Washington, commenced this action in the superior court of Spokane county, against the defendant, a citizen of Oregon, for personal injuries al-

leged to have been sustained by him within this state, while employed by the defendant "as a sectionman and extra gangman." The cause was removed to this court as a controversy wholly between citizens of different states, and as one arising under and depending upon the construction of a federal statute.

Briefly stated, the grievance set out in the complaint is that at the times mentioned the defendant was engaged in operating a railroad in and between these states; that the plaintiff was, on the 7th day of December, 1908, and for several months prior thereto had been, engaged as aforesaid in repairing the defendant's main track; that while acting under the instructions of the defendant's section boss upon said date he was directed to drive partially driven spikes further into the ties with a spike maul, for the purpose of tightening the joints of the rails, in pursuance of which he struck a spike, when, from the force of the blow, the head flew off and striking him in the left eye, destroyed the sight, and inflicted other injuries. It is alleged that this spike was old, worn out, defective, and insufficient, which was known to the defendant and to its employés who had theretofore placed it in position to be driven.

The provisions of the Act Cong. April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1909, p. 1171), are expressly invoked in order to bring the defendant within the rule of liability established by that act where injury results from the negligence of fellow servants. While it has been contended, in aid of the defendant's demurrer to the complaint, that the allegations are not sufficient to render the defendant liable, in that the defect, if any, must have been as apparent and manifest to the plaintiff as it was to the servants of defendant, and therefore no cause of action is stated in any view, the broad averments relating to the condition of the spike are strongly suggestive of proof that defendant observed the care which the law imposed upon it. A far-reaching question grows out of the denial of the power of Congress over the subject-matter of the action. A case involving the validity of the statute is pending before the Supreme Court, and but for the fact that this case is said to present phases not there in issue, without the decision of which it cannot further proceed, the authoritative interpretation of that court would be awaited for guidance.

Before passing to the contentions made regarding the constitutionality and applicability of the statute, it is proper to observe, because the plaintiff's brief would seem to indicate a contrary view, that the section foreman, as well as those of the other crew, were the fellow servants of the plaintiff. Northern Pac. R. Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009; Northern Pac. R. Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994; Northern Pac. R. Co. v. Charless, 162 U. S. 359, 16 Sup. Ct. 848, 40 L. Ed. 999; Martin v. Atchison, Topeka & Santa Fé R. Co., 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051.

The rule, therefore, prevailing in this state, to which attention has been called, is not one to be followed here in view of the decisions of the Supreme Court upon this general rule of law. Baltimore & Ohio R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772.

The argument that the statute is an attempt to exceed the powers of Congress, and, in any view, if it is not subject to this criticism, that it was not intended to include such controversies as the present, has been presented from several view points.

1. The position is taken that the act which, according to common knowledge, was passed for the purpose of curing defects of the Act June 11, 1906, c. 3073, 34 Stat. 233 (U. S. Comp. St. Supp. 1909, p. 1148), has perpetuated infirmities that the Supreme Court in Employer's Liability Cases, 207 U. S. 463, 502, 28 Sup. Ct. 141, 52 L. Ed. 297, regarded as fatal to the validity of the earlier act. The specific objection is that, while liability is carefully limited by the preceding clauses of section 1 to common carriers while engaged in commerce between the states, etc., and to injuries to employés while engaged in such commerce, the final clause of that section holds the carrier liable for "injury or death resulting in whole or in part from the negligence of any of the officers, agents or employés of such carrier," etc. Hence the conclusion that the vice pointed out by the Supreme Court in the act of 1906 has been preserved in the present act by the provision that the carrier is chargeable by an interstate employé with the negligence of one not engaged in interstate commerce, a matter, it is contended, with which the states only are concerned. But the ground upon which the court rested its decision was that interstate and intrastate employés were inseparably embraced within the statute, the latter not being within the purview of congressional legislation. The same point was made in Watson v. St. Louis, I. M. & S. Ry. Co., 169 Fed. 943. In passing upon it Judge Trieber in a learned opinion accepted the literal construction of the statute as constituting the legislative intent, but disposed of the argument by holding to the competency of Congress in virtue of the commerce clause of the Constitution. That it was the purpose to make an interstate carrier liable to an employé engaged in interstate commerce for the negligence of a fellow servant, also engaged in such commerce, is beyond controversy. It is not necessary, in view of the facts disclosed by the complaint, to go further than to hold that interstate and intrastate service are separable by upholding liability when injury results from the negligence of fellow servants engaged in interstate commerce and denying it when resulting through the negligence of an intrastate employé to one engaged in interstate commerce; and this if the act could be held subject to the objection urged against it. This would appear at first blush to run counter to the reasoning which resulted in the overthrow of the first attempt to regulate the matter; but the distinction lies in the definite designation as to when the interstate carrier shall be liable, namely, when engaged in interstate commerce, and to whom it shall be liable, that is, to the employé so engaged, a segregation not made in the original act.

2. But even admitting the sufficiency of the act in other respects, it has been said that Congress may not regulate the relation of master and servant. Counsel base this conclusion upon language used by Mr. Justice White in the Employer's Liability Cases, supra, but the opinion, carefully read, does not bear out the contention. The following seems to put the matter at rest:

"We think the unsoundness of the contention that, because the act regulates the relation of master and servant, it is unconstitutional, because under no circumstances and to no extent can the regulation of such subject be within the grant of authority to regulate commerce, is demonstrable. We say this because we fail to perceive any just reason for holding that Congress is without power to regulate the relation of master and servant, to the extent that regulations adopted by Congress on that subject are solely confined to interstate commerce, and therefore are within the grant to regulate that commerce or within the authority given to use all means appropriate to the exercise of the powers conferred. To illustrate: Take the case of an interstate railway train, that is, a train moving in interstate commerce, and the regulation of which therefore is, in the nature of things, a regulation of such commerce. It cannot be said that, because a regulation adopted by Congress as to such train when so engaged in interstate commerce deals with the relation of the master to the servants operating such train or the relations of the servants engaged in such operation between themselves, it is not a regulation of interstate commerce." Page 495 of 207 U. S., page 144 of 28 Sup. Ct. (52 L. Ed. 297).

That the four nonconcurring justices understood the majority opinion as upholding the power of Congress in this regard appears from their dissenting opinions. Pages 504, 540, 541 of 207 U. S., pages 148–163 of 28 Sup. Ct. (52 L. Ed. 297). Subsequently, in Adair v. United States, 208 U. S. 178, 28 Sup. Ct. 282, 52 L. Ed. 436, the court, referring to the decision, gave unqualified indorsement of that view by the language following:

"In that case the court sustained the authority of Congress, under its power to regulate interstate commerce, to prescribe the rule of liability, as between interstate carriers and its employés in such interstate commerce, in cases of personal injuries received by employés while actually engaged in such commerce."

3. Giving full scope to the power of Congress over interstate commerce, and admitting sufficient breadth of the act to include the right to regulate the relations of employer and employé while each is engaged in such commerce, still it is contended that it appears from the complaint that the plaintiff was not so engaged; that repairing the track wholly within the state is in no sense within that term. But the track of a railroad company engaged both in interstate and intrastate commerce is, while essential to the latter, indispensable to the former. It is equally important that it be kept in repair. Where the traffic itself is not in fact interstate, although upon a railroad engaged in commerce between the states, such as trains devoted entirely to local business and wholly within the boundaries of a state, a different case is presented. There it is possible to identify what is and what is not interstate; but where, as in this case, a road is admittedly engaged in both, it becomes impossible to say that particular work done results directly for the benefit of one more than the other. Manifestly it is for the accommodation of both. To hold, then, that a workman engaged in repairs upon the track of such a carrier is not furthering interstate commerce would be to deny the power to control an indispensable instrument for commercial intercourse between the states— to deny the power of Congress over interstate commerce—but that the power extends to the control of those instrumentalities through which such commerce is carried on is not an open question. Having reference to that phase of the subject, the Supreme Court has said:

"That assumption is this: That commerce, in the constitutional sense, only embraces shipment in a technical sense, and does not, therefore, extend to carriers engaged in interstate commerce, certainly in so far as so engaged, and the instrumentalities by which such commerce is carried on—a doctrine the unsoundness of which has been apparent ever since the decision in Gibbons v. Ogden, 9 Wheat. 1 [6 L. Ed. 23] and which has not since been open to question." Interstate Commerce Commission v. Illinois Central Railroad Co., 215 U. S. 452, 30 Sup. Ct. 155, 161, 54 L. Ed. ——.

"The power also embraces within its control all the instrumentalities by which that commerce may be carried on and the means by which it may be aided and encouraged." Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 204, 5 Sup. Ct. 826, 828, 29 L. Ed. 158.

"Commerce is a term of the largest import. * * * The power to regulate it embraces all the instruments by which said commerce may be conducted." Weldon v. State of Missouri, 91 U. S. 275, 280, 23 L. Ed. 347.

No doubt there may be situations, indeed we have the highest authority for it (Employer's Liability Cases, supra, 207 U. S. 495, 28 Sup. Ct. 141, 52 L. Ed. 297) when instrumentalities that may be used for interstate or intrastate traffic, or both, but which at the time are not being used for either, as when engines or cars are undergoing repair, or in cases of clerical work when the acts or things done are not physically or otherwise directly connected with the moving of traffic, where there could be no ground for claiming liability under the act of Congress, even though the carrier in fact be engaged in interstate as well as local traffic. But where the employment necessarily and directly contributes to the more extended use and without which interstate traffic could not be carried on at all, no reason appears for denying the power over the one, although it may indirectly contribute to the other. The particular question is an apt illustration of the intricacies to which our dual system of government often leads; but the intricacy is but an incident, and it can neither defeat nor impair the power of Congress over interstate commerce. Since the track, in the nature of things, must be maintained for commerce between the states, the work bestowed upon it inures to the benefit of such commerce. It is therefore subject to federal control, even though it may contribute to carriage wholly within the state. Being inseparable, yet interstate commerce inherently abiding in the thing to be regulated, as to the track, the state jurisdiction must give way, or at least it cannot defeat the superior power of Congress over the subject-matter whenever a carrier is using the track for the double purpose.

In re Debs, 158 U. S. 564, 579, 15 Sup. Ct. 900, 39 L. Ed. 1092, is an authority sustaining this view. The following from Ex parte Siebold, 100 U. S. 371, 395, 25 L. Ed. 717, was there quoted with approval:

"This power to enforce its laws and to execute its functions in all places does not derogate from the power of the state to execute its laws at the same time and in the same places. The one does not exclude the other, except where both cannot be executed at the same time. In that case, the words of the Constitution itself show which is to yield: 'This Constitution, and all laws which shall be made in pursuance thereof, * * * shall be the supreme law of the land.'"

4. By comparing the act with article 3 of the Constitution, the theory is deduced that it attempts to delegate the judicial power of the

United States to state courts in violation of that article. Carrying, the argument a step further, it is said that, since Congress cannot confer judicial power upon state tribunals, the state court being without, jurisdiction, this court acquired none on removal; that the jurisdiction here must rest upon that of the court of original jurisdiction, must be accepted as the rule. Fidelity Trust Co. v. Gill Car Co., 25 Fed. 737; Crowley v. Southern Railway Co., 139 Fed. 851.

But with due respect for the able counsel who have so well presented this view, it would seem to confuse rights with remedies.

As to how far Congress may invest state courts with judicial power was fully considered by the Circuit Court of Appeals in Levin v. United States, 128 Fed. 826, 63 C. C. A. 476 (Eighth Circuit), where the conclusion was reached that the Supreme Court in the early decisions of Martin v. Hunter, 1 Wheat. 304, 4 L. Ed. 97, and Houston v. Moore, 5 Wheat. 1, 5 L. Ed. 19, had reference only to the power over that class of cases specified in section 2 of article 3; and those cases which have upheld the authority of the state courts in such matters as the naturalization of aliens, the arrest and holding for trial of offenders against the laws of the United States by state officers, and the like, were cited and fully considered. But if the act does not attempt to delegate judicial power, a discussion of the point would be of no avail. Of that we proceed to inquire.

It is not enough to sustain federal jurisdiction that the right claimed may be traced to an act of Congress. Thus:

"The mere fact that the title of plaintiff comes from a patent or under an act of Congress does not show that a federal question arises." Joy v. St. Louis, 201 U. S. 341, 26 Sup. Ct. 480 (50 L. Ed. 776).

"This court has frequently been vainly asked to hold that controversies in respect to lands, one of the parties to which had derived his title directly under an act of Congress, for that reason alone presented a federal question." Blackburn v. Portland Gold Mining Co., 175 U. S. 579, 20 Sup. Ct. 225 (44 L. Ed. 276), elaborated and affirmed in Shoshone Mining Co. v. Rutter, 177 U. S. 505, 20 Sup. Ct. 726, 44 L. Ed. 864, and in Sweringen v. St. Louis, 185 U. S. 45, 22 Sup. Ct. 569, 46 L. Ed. 795.

"It has often been held that the validity of a statute or treaty of the United States is not 'drawn in question,' within the meaning of section 709 (Rev. St. [U. S. Comp. St. 1901, p. 575]), every time rights claimed under a statute or treaty are controverted, nor is the validity of an authority every time an act done by such authority is disputed. Baltimore & Potomac R. R. Co. v. Hopkins, 130 U. S. 210 [9 Sup. Ct. 503, 32 L. Ed. 908]; Cook County v. Calumet, etc., Canal Company, 138 U. S. 635, 653 [11 Sup. Ct. 435, 34 L. Ed. 1110]; Borgmeyer v. Idler, 159 U. S. 408 [16 Sup. Ct. 34, 40 L. Ed. 199]; Blackburn v. Portland Mining Company, 175 U. S. 571 [20 Sup. Ct. 222, 44 L. Ed. 276]; Florida Central Railroad Company v. Bell, 176 U. S. 321, 328 [20 Sup. Ct. 399, 44 L. Ed. 486]; Water Power Company v. Street Railway Company, 172 U. S. 488 [19 Sup. Ct. 247, 43 L. Ed. 521]." Kennard v. Nebraska, 186 U. S. 308, 22 Sup. Ct. 879 (46 L. Ed. 1175).

"Moreover, the state courts are perfectly competent to decide federal questions arising before them, and it is their duty to do so. Robb v. Connolly, 111 U. S. 624, 637 [4 Sup. Ct. 544, 28 L. Ed. 542]; Missouri Pacific Railway Co. v. Fitzgerald, 160 U. S. 556, 583 [16 Sup. Ct. 389, 40 L. Ed. 536].

"And, we repeat, the presumption is in all cases that the state courts will do what the Constitution and laws of the United States require. Chicago & Alton Railroad v. Wiggins Ferry Co., 108 U. S. 18 [1 Sup. Ct. 614, 617, 27 L. Ed. 636]; Shreveport v. Cole, 129 U. S. 36 [9 Sup. Ct. 210, 32 L. Ed. 589]; Neal v. Delaware, 103 U. S. 370, 389 [26 L. Ed. 564]; New Orleans v. Ben-

jamin, 153, U. S. 411, 424 [14 Sup. Ct. 905, 38 L. Ed. 764]." Defiance Water Co. v. Defiance, 191 U. S. 184, 24 Sup. Ct. 67 (48 L. Ed. 140).

"A state court having original jurisdiction of the parties before it may consistently with existing federal legislation determine cases at law or in equity arising under the Constitution and laws of the United States or involving rights depending upon such Constitution and laws. * * * Upon the state courts equally with the courts of the Union rests the obligation to guard, enforce, and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof whenever those rights are involved in any suit or proceeding before them." Robb v. Connolly, 111 U. S. 637, 4 Sup. Ct. 551 (28 L. Ed. 542).

"The laws of the United States are laws in the several states, and just as much binding on the citizens and courts thereof as the state laws are. The United States is not a foreign sovereignty as regards the several states, but is a concurrent, and, within its jurisdiction, paramount sovereignty. Every citizen of a state is a subject of two distinct sovereignties, having concurrent jurisdiction in the state—concurrent as to place and persons, though distinct as to subject-matter. Legal or equitable rights, acquired under either system of laws, may be enforced in any court of either sovereignty competent to hear and determine such kind of rights and not restrained by its Constitution in the exercise of such jurisdiction. Thus, a legal or equitable right acquired under state laws may be prosecuted in the state courts, and also, if the parties reside in different states, in the federal courts. So rights, whether legal or equitable, acquired under the laws of the United States, may be prosecuted in the United States courts, or in the state courts, competent to decide rights of the like character and class; subject, however, to this qualification: That where a right arises under a law of the United States, Congress may, if it see fit, give to the federal courts exclusive jurisdiction. See remarks of Mr. Justice Field, in The Moses Taylor, 4 Wall. 429 [18 L. Ed. 397], and Story, J., in Martin v. Hunter's Lessee, 1 Wheat. 334 [4 L. Ed. 97]; and of Mr. Justice Swayne, in Ex parte McNeil, 13 Wall. 236 [20 L. Ed. 624].

"The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief, because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the state as it is to recognize the state laws. The two together form one system of jurisprudence, which constitutes the laws of the land for the state; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent. The disposition to regard the laws of the United States as emanating from a foreign jurisdiction is founded on erroneous views of the nature and relations of the state and federal governments. It is often the cause or the consequence of an unjustifiable jealousy of the United States government, which has been the occasion of disastrous evils to the country.

"It is true the sovereignties are distinct, and neither can interfere with the proper jurisdiction of the other, as was so clearly shown by Chief Justice Taney, in the case of Ableman v. Booth, 21 How. 506 [16 L. Ed. 169]; and hence the state courts have no power to revise the action of the federal courts, nor the federal the state, except where the federal Constitution or laws are involved. But this is no reason why the state courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent, and not denied." Claflin v. Houseman, Assignee, 93 U. S. 136, 137, 23 L. Ed. 833.

The act does not attempt to delegate to the courts of the states that which is only cognizable in the national courts, but it creates substantive rights in virtue of the power of Congress over interstate commerce. These may be availed of in any court of competent jurisdiction. When the amount in controversy is sufficient to warrant the Circuit Courts of the United States in entertaining a cause, and there is either diversity of citizenship or the right sought to be enforced nec-

essarily involves the validity or interpretation of a Federal statute, it is subject to removal unless the act which confers the right expressly prohibits (Claflin v. Houseman, Assignee, supra), as does the amendment passed since the cause of action in this case arose.

State courts enforce rights arising under the laws of the different states, applying the rule lex loci contractus. They uphold rights arising in foreign nations which depend upon the construction of foreign laws. Let it be admitted that this is through comity only, yet it would appear even then that the analogy ought to follow. But there is a stronger reason growing out of the more intimate relation of the states to the general government. The Constitution of the United States being the supreme law of the land, state and federal courts are alike subject to its provisions, and the refusal of the former to enforce rights conferred by Congress would put them in the same category as would a refusal to entertain causes flowing from any other recognized source of authority. It would be an anomaly in our system if state tribunals, after having so long entertained the grievances of litigants, where rights are traceable to congressional legislation, should refuse to further do so because of the fact that there has been provided by a power clearly competent, different rules of liability for those engaged in interstate commerce from those which may be fixed by statute or recognized by decisions in the several states. All government rests upon acquiescence in the established order. When common consent is withdrawn, prescribed rules of conduct are overthrown and anarchy reigns; and it is not to be supposed that state courts will or can refuse to abide by the result when the Supreme Court, the final arbiter, has decided that they have jurisdiction. If that should occur, the Constitution would cease to be the supreme law of the land, and its express provision that "the judges in every state shall be bound thereby anything in the Constitution or laws of any state to the contrary notwithstanding" would become null and its application inoperative.

So, the holding in Hoxie v. N. Y., N. H. & H. R. R. Co., 82 Conn. 352, 73 Atl. 754, that it was not intended by Congress that the rights granted should be enforceable in the state courts, cannot be followed for the reasons already assigned and for the additional reason that jurisdiction of the state courts is attributable to the powers conferred upon them by the states. To defeat the exercise of this power there must be an express prohibition by Congress.

"If an act of Congress gives a penalty to a party aggrieved without specifying a remedy for its enforcement, there is no reason why it should not be enforced if not provided otherwise by some act of Congress by a proper action in a state court." Claflin v. Houseman, supra, 93 U. S. 137 (23 L. Ed. 833).

"The Legislature of a state cannot abrogate or modify any of the provisions of the federal Constitution nor of the acts of Congress touching matters within congressional control; but the courts of the state, in the absence of a prohibitory provision in the federal Constitution or acts of Congress, have full jurisdiction over cases arising under the Constitution and laws of the United States." Murray v. Chicago & N. W. Ry. Co., 62 Fed. 24.

Since this cause was submitted, the statute has been amended by the Act approved April 5, 1910. Sess. Laws 1909–10, p. 291. That part of the amendment germane to the present inquiry reads:

"The jurisdiction of the courts of the United States under this act shall be concurrent with that of the courts of the several states, but no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States."

Attention has been called to the amendatory act as fortifying the position taken by counsel before its enactment. It is assumed that it is a legislative construction of an existing statute, and, inasmuch as the amendment now expressly confers jurisdiction in terms upon state courts that it was not intended to give such jurisdiction in the first instance. While it is said by Sutherland on Statutory Construction, § 229, that the Legislature cannot authoritatively declare what the law is or has been—that to do so is a judicial function—the author gives his adherence to the following:

"A legislative construction of a statute is entitled to consideration, and will often have much weight. In cases of doubt and uncertainty the solemn declaration of the legislative branch of the government, or practical construction by the executive department, gives a certain sanction, and will be influential with the courts."

Sedgwick on the Construction of Statutory & Constitutional Law, p. 227, thus states the rule:

"The opinion of a Legislature subsequent to that which enacted the statute, as to its construction, should have no more weight than that of private persons."

But giving the rule its broadest application, in the report of the Senate Judiciary Committee presented by Senator Borah, we find the following reference to the amendment to make the jurisdiction of the courts of the United States "concurrent with the courts of the several states":

"This is proposed in order that there shall be no excuse for courts of the states to follow in the error of the Supreme Court of Errors of Connecticut in the case of Hoxie v. N. Y., N. H. & H. R. R. Co., ([82 Conn. 352] 73 Atl. 754), in which case the court declined jurisdiction upon the ground, inter alia, that Congress did not intend that jurisdiction of cases arising under the act should be assumed by state courts.

"It is clear under the decisions of the Supreme Court of the United States that this conclusion of the Connecticut court is erroneous."

In the report many decisions of the Supreme Court are collected to show, and which do show, that the act needed no amendment; that state courts had jurisdiction without it. The suggestion, therefore, that the amendatory act amounts to a legislative construction, can have little weight. Rather should it be said that it was intended as a legislative precaution, for it was plainly the purpose of the committee at least, in this respect, to remove doubt rather than to supply a deficiency.

There is a more serious aspect growing out of the amendment, pertinent to the present discussion. If it is not competent for Congress to delegate the judicial power of the United States to state tribunals, and the act could be held to be an attempt to do so, the amendment has not met the objection, nor can it be met, for if, on the one hand, state courts had no jurisdiction for that reason, the amendment is open to the same objection as that of which it is amend-

atory; if, on the other, they did have jurisdiction under the act before its amendment, it was not because Congress had conferred the power, but because of jurisdiction in the rightful exercise of their own powers.

5. Objections to validity that have seemed insurmountable to defendant's counsel are: Inconsistencies, discriminations, and conflicts between state and federal authority, which it is claimed a practical administration of the law will necessarily result in. These found their fullest expression through the Supreme Court of Connecticut in Hoxie v. Railroad Company, supra. There the position was illustrated in this way: By the common law or state statutes certain rules prevail regarding the accountability of employers to employés for negligence, and in case of death the statutes designate who shall be entitled to recover. What was apparently regarded as a fatal defect would exist, in that juries might be led into confusion as to the measure of liability, for in determining the case of an interstate carrier one rule might prevail, whereas, in that of an intrastate carrier another would control; the statute thus introducing different rules of liability in the same tribunal. But all these objections rest upon that which, when followed to an ultimate conclusion, would deny the power of Congress to regulate those acts which do in fact include interstate commerce within the state, and it would exclude the extention of its authority across state lines and render it null and void within the borders of a state, while the contrary rule has been repeatedly laid down. Mississippi R. R. Co. v. Illinois Central R. R., 203 U. S. 335, 343, 27 Sup. Ct. 90, 51 L. Ed. 209; Atlantic Coast Line R. R. v. Wharton, 207 U. S. 328, 28 Sup. Ct. 121, 52 L. Ed. 230; Employer's Liability Cases, supra; Pullman Company v. Kansas, 216 U. S. 56, 30 Sup. Ct. 232, 54 L. Ed. ——; Western Union Telegraph Co. v. Kansas, 216 U. S. 1, 30 Sup. Ct. 191, 54 L. Ed. ——, and cases there cited.

As to the designation of those who may succeed to the rights of deceased persons, if Congress may legislate in the exercise of its powers over interstate commerce regarding employés at all, as we have seen that it may, certainly it is competent and incidentally incumbent upon it to declare who shall be entitled to recover in case of the death of an employè. If this interferes with the administration of estates, which may well be doubted, it is because Congress has plenary power over the subject. It is denying nothing to the states, for the regulation of the subject is wholly with the federal government. If it is interstate commerce, then state authority is excluded because it is so. An illustration is found in McCune v. Essig, 199 U. S. 382, 26 Sup. Ct. 78, 50 L. Ed. 237, where the right to take under the homestead law was considered. It was held that the widow took under the federal statute, and that the children were not entitled to take as heirs under the state statute. While the Supreme Court in the Liability Cases (pages 491, 492 of 207 U. S., page 143 of 28 Sup. Ct. [52 L. Ed. 297]) did not notice all of these objections, those which were mentioned were regarded as being within legislative discretion. Having reference to them, they were thus disposed of:

"But without, even for the sake of argument, conceding the correctness of these suggestions, we at once dismiss them from consideration as concerning

merely the expediency of the act and not the power of Congress to enact it. We say this in testing the constitutionality of the act; we must confine ourselves to the power to pass it and may not consider evils which it is supposed will arise from the execution of the law whether they be real or imaginary."

So the argument that the act is discriminative, in that a person not entitled to claim an amount which would give this court jurisdiction might be precluded from brnging any action at all, fails for the reason already assigned. It is not every controversy arising under federal statutes that may be heard in the federal courts. A certain amount has been fixed by Congress before those courts may entertain causes which do require the interpretation of such statutes, and even then it is optional with litigants, yet removal statutes are not discriminative and void for that reason.

6. It is provided by section 5 that any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from the liability created by the act, shall be to that extent void. This, it is said, violates the fifth amendment, in that it deprives of property without due process of law by its restraint upon the right of both carrier and employé to contract as to personal employment concerning matters which are purely and solely vested in the discretion of the contracting parties, contrary to the rule laid down in Adair v. United States, 208 U. S. 161, 28 Sup. Ct. 277, 52 L. Ed. 436, and Lochner v. New York, 198 U. S. 45, 25 Sup. Ct. 539, 49 L. Ed. 937. In this case it does not appear that any contract has been made which is violative of the section referred to.

The provisions of the act in this regard are clearly separable; there might be a statutory liability in the absence of contract, and yet the parties be left free to contract in avoidance of it without overturning the provision which would control in the absence of contract. El Paso & Northeastern Ry. Co. v. Gutierrez, 215 U. S. 87, 30 Sup. Ct. 21, 54 L. Ed. ——.

7. It has been urged that the act must rest, if it can be upheld at all, upon the purpose to render the occupation of employés less hazardous, and in that way promote interstate commerce. The practical effect of the act is said to be that it will encourage carelessness in the place of inducing the exercise of greater care; that a servant, knowing that an employer would be liable for his negligence if it should result in injury to his fellow servants, would not exercise the same degree of diligence as where he knew that there would be no such liability. But this is referable to legislative discretion, not to excess of power in the exercise of legislative functions. Opinions might differ concerning the practical effect of the provision, but Congress only may judge of it. The control of the subject admitted, the courts must accept the conclusion of that branch of the government charged with the duty of making laws.

8. Finally, the invalidity of the act is based upon the failure to include all interstate carriers as class legislation violative of the fourteenth amendment. This view was discredited by the Supreme Court in Employer's Liability Cases, 207 U. S. 503, 28 Sup. Ct. 141, 52 L.

Ed. 297, upon the authority of Missouri Pac. Ry. Co. v. Mackey, 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; Minneapolis, etc., Ry. Co. v. Herrick, 127 U. S. 210, 8 Sup. Ct. 1176, 32 L. Ed. 109; Chicago, etc., R. R. v. Pontius, 157 U. S. 209, 15 Sup. Ct. 585, 39 L. Ed. 675. The same contention was met in Watson v. St. Louis R. Co., supra, as follows:

"In every instance in which state statutes abolishing or modifying the fellow-servant rule and limiting the act to railroads only, as in the act now under consideration, have been attacked as being in violation of the equal protection clause of the fourteenth amendment, the Supreme Court has overruled the contention and sustained the validity of the acts, declaring that such classification by the legislative department is permissible and not within the prohibition of that amendment."

The holding also in United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. 836, is an adherence to the same rule.

Jyntaro Tamura v. Great Northern Railway Company, handed down by the Supreme Court of the state since the argument of this case (108 Pac. 774), has been cited as supporting the view that the act is unconstitutional; but the decision was based upon the failure of the plaintiff to affirmatively establish that the work engaged in was that of interstate commerce. It not so appearing, the constitutionality of the act was not involved.

It follows that the demurrer must be overruled.