T. P. CHERRY v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 10 October, 1917.)

1. **Railroads—Employer and Employee—Master and Servant—Commerce—Repairing Track—Federal Act.**

> An employee injured by defendant's negligence while engaged in replacing cross-ties in a spur track of a railroad used in interstate commerce, the spur leading to a warehouse from which such shipments were received for transportation, and at the time a train of this character awaited the use of the spur, is held to be engaged in interstate commerce at the time of the injury, within the meaning of the Federal statute, and may maintain his action thereunder.

2. **Master and Servant—Employer and Employee—Railroads—Negligence—Evidence—Trials—Assumption of Risks.**

> Where there is evidence that a railroad company has furnished its employee insufficient help to replace the cross-ties under its rails with heavy ones, and upon complaint its roadmaster had ordered the employee to do the work, saying he (the employee) could himself employ proper help, which the conditions and circumstances rendered impossible for him to do: *Held*, sufficient to sustain a finding in the negative upon the issue as to assumption of risks, and to sustain a finding upon the issue as to defendant's actionable negligence.

CIVIL ACTION, tried before *Stacy, J.,* at April Term, 1917, of PITT, upon these issues:

1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Was the plaintiff employed by the defendant in interstate commerce, and engaged in such commerce at the time of his injury? Answer: Yes.

3. Did the plaintiff voluntarily assume risk of injury, as alleged in the answer? Answer: No.

4. What damage, if any, is plaintiff entitled to recover? Answer: $700.

From the judgment rendered, defendant appealed.

*Albion Dunn for plaintiff.*
*Skinner & Cooper for defendant.*

BROWN, J.　The evidence tends to prove that the plaintiff was employed as section master on defendant's road; that among other tracks in plaintiff's charge was a spur track in the town of Greenville, leading to a tobacco company's warehouse.　Plaintiff was ordered by the roadmaster, a superior officer, to make repairs upon said spur track before the arrival of a freight train which was then in the block.　The spur track was used by defendant in both its interstate and intrastate business. Cars were frequently loaded on the spur track at the American Tobacco Company's warehouse for transportation to other States.

The plaintiff's evidence tends to prove that he, together with one Stancill, a boy 15 years of age, commenced to make the repairs as directed. These repairs consisted in taking out rotten ties and replacing them with large switch ties, weighing something like 400 pounds each.　Plaintiff testifies that he had been furnished with no help except the Stancill boy; that he had complained to the roadmaster that Stancill was not sufficient; that the roadmaster ordered him to go ahead and do the best he could; that the roadmaster could not make men work, but for the plaintiff to get them if he could.

The plaintiff says that he could not get any men then, and gave as a reason for it the pay allowed by the defendant and the time and method of payment.　It is contended and, we think, supported by the evidence, that the work was required to be done immediately, and that the plaintiff acted in obedience to the orders of the roadmaster.

The plaintiff testifies that he lifted one of the ties and was carrying it to the spur track, where it was to be immediately used, when in some way he stumbled and fell, owing to the weight of the tie, which fell on him and seriously injured him.　Plaintiff testified that ordinarily it required two and sometimes four full-grown men to handle such ties as were being used on this occasion.　There is evidence to the effect that if the boy, Stancill, had attempted to carry the ties in connection with the plaintiff, it would have hindered the plaintiff, as the plaintiff was so much taller.

It is contended that the plaintiff was not engaged in interstate commerce, and that therefore this action cannot be maintained.　It must be admitted that, tested by the decisions of the Supreme Court of the United States on this question, the matter is left in some doubt, but there is one case so much like this that we feel obliged to follow it and apply it here.

The facts in the case at bar are, that the plaintiff was carrying crossties to repair a track used by the defendant in its interstate commerce, and then immediately to be used by a waiting train.　In the case of

*Peterson v. R. R.,* 229 U. S., 146, the plaintiff was injured while carrying bolts to repair a bridge upon the track of the railroad company which was engaged in interstate commerce. In that case it was held that the case was properly triable under the Employer's Liability Act, as plaintiff was engaged in interstate commerce when injured. In that case the Court says:

"Tracks and bridges are as indispensable to interstate commerce by railroads as are engines and cars; and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair."

In *Montgomery v. Southern Pacific Co.,* 47 L. R. A. (N. S.), 13, it is held, substantially, that all employees who participate in the maintenance or operation of the instrumentality for the general use of the road, thereby enhancing the utility of such commerce, are necessarily engaged in the work of interstate commerce, within the meaning of the act.

In *Zikos v. Oregon R. R. Co.,* 179 Fed., 893, the Court says, in holding that the employees engaged in working on a track over which both interstate and intrastate commerce is carried, was himself engaged in interstate commerce: "The track of the railroad company engaged in both interstate and intrastate commerce is, while essential to the latter, indispensable to the former. It is equally important that it be kept in repair. . . . To hold that the workman engaged in repairs upon the track of such a carrier is not furthering interstate commerce would be to deny the power to control an indispensable instrument for commercial intercourse between the States."

In *Lanphere v. Oregon Ry.,* 47 L. R. A. (N. S.), 38, this matter is fully discussed and numerous authorities collected in the notes, which, we think, fully sustain the contention that the plaintiff, at the time of the injury sustained, was engaged in an act relating to interstate commerce. *West v. R. R.,* this term.

We think the motion to nonsuit was properly overruled. The plaintiff's evidence tends to prove that the defendant had furnished him insufficient help; that the roadmaster had ordered him to repair the track immediately, so that a waiting train could use it; that he could not get any help, and that which he had was inefficient, and that the regulations of the defendant company in regard to pay was such as prevented the hiring of help that he needed, even if he had had the time to have gotten it..

In any view of this evidence, we do not think that the plaintiff assumed the risk of injury on his own account.

This case is very much like *Pigford v. R. R.,* 160 N. C., 97. In that case the plaintiff was instructed by his superior officer to load a gondola with iron rails. The plaintiff asked for more help, stating that he did

not have help enough. He was told to "do the best you can," and while loading the rails with insufficient help, plaintiff was hurt, and the Court sustains the finding of the jury that the plaintiff had not assumed the risk of his employment.

The subject is very fully discussed in that case, and we content ourselves by referring to it.

We have examined the other assignments of error, and think that they are without merit.

No error.