ARNOLD LOFLIN, BY HIS NEXT FRIEND, ANNIE LOFLIN, v. HIGH POINT, THOMASVILLE & DENTON RAILROAD COMPANY.

(Filed 15 December, 1937.)

1. **Master and Servant § 14a—Evidence of master's negligence, resulting in injury to servant, held sufficient to be submitted to jury.**

   The evidence tended to show that plaintiff, in the course of his employment working with a crew putting new crossties under defendant's tracks, was required to step across rails which had been jacked up in order to take out the old ties and replace them, that as he was walking across the jacked-up tracks holding one end of a crosstie, the rail dropped down on his foot, mashing it, and that the rail fell because the "jack was not under it right." Plaintiff alleged that the "track was carelessly and negligently jacked up so that the jack was not under the rail as far as it should have been" for safety. *Held:* Under the allegations, the evidence, viewed in the light most favorable to plaintiff, was sufficient to have been submitted to the jury.

2. **Master and Servant § 17—Plaintiff held not barred by assumption of risk as matter of law under the evidence.**

   Plaintiff's evidence tended to show that as he was walking across a track in the scope of his employment, the track, which had been jacked up in order to replace the crossties, fell and injured plaintiff's foot. *Held:* Defendant's contention that upon plaintiff's own evidence, plaintiff assumed the risk as a matter of law, cannot be sustained, since the evidence does not justify the court in holding that the danger was so obvious and imminent that plaintiff realized, or by the exercise of due care could have realized the danger.

BARNHILL, J., dissenting.

WINBORNE, J., concurs in dissent.

APPEAL by plaintiff from *Sink, J.,* at May Term, 1937, of DAVIDSON. Reversed.

*J. F. Spruill for plaintiff, appellant.*
*Lovelace & Kirkman and Phillips & Bower for defendant, appellee.*

SCHENCK, J. This is a civil action to recover damages for personal injuries to the plaintiff alleged to have been proximately caused by the negligence of the defendant.

When the plaintiff had introduced his evidence and rested his case, the defendant moved for judgment as in case of nonsuit (C. S., 567), which motion was allowed, and from judgment accordant therewith the plaintiff appealed to the Supreme Court, assigning as error the ruling and judgment of the court.

The evidence tended to show that the plaintiff was employed by the defendant as a section hand, and on 14 July, 1936, was engaged in helping the section force put in new crossties under a sidetrack of the defendant at Cunningham's brickyard, and that his duties required him to help two other section hands carry the new crossties from the west side of the sidetrack to the east side thereof to be put in the sidetrack from the east side; that the two other section hands carried the front end of the crossties which were laid across a stick, each hand supporting one end of the stick, and the plaintiff carried the rear end of the crossties, resting the end thereof "against his stomach"; that the east rail of the sidetrack had been elevated eight or ten inches by a jack to permit the removal of old ties and the placing of new ties, and that as the plaintiff was crossing the sidetrack, carrying a tie, and after the other two section hands had placed the front end of the tie upon the ground on the east side of the east rail of the sidetrack, and as the plaintiff was stooping to place the rear end of the crosstie on the ground, but before he had let loose of the tie, the east rail of the sidetrack dropped down upon the foot of the plaintiff, mashing it.

The complaint includes, among others, the following allegations of negligence: "(a) In that the defendant company negligently failed and neglected to provide plaintiff with a safe and suitable place in which to perform his work," and "(f) In that the east rail of said sidetrack was carelessly and negligently jacked up so that the jack was not under the rail as far as it should have been in order to permit the plaintiff safely to pass over same."

The plaintiff testified:

"Q. What, if you know, caused the rail to fall?

"A. The jack was not under it right.

"Q. Who directed you to carry the ties across there to where the rail was jacked up?

"A. The section foreman, Mr. Irvin Snider.

"Q. Who directed the rails to be jacked up there that day?

"A. Irvin Snider.   In my opinion the rails had been jacked up about thirty minutes before the accident."

And on cross-examination the plaintiff testified:

"Q. I ask you if you didn't drop your crosstie on the rail?

"A. No, sir.

"Q. What did you do with your end of the crosstie?

"A. I throwed it down on the other side of the rail.

"Q. You threw it down on the rail and that knocked the jack off the rail on your foot?"

"A. No, sir, I never threw it on the rail.

"Q. Threw it off on the other side of the rail?

"A. Yes, sir.

"Q. Threw it off on the side of the rail the other man put it on?

"A. Yes, sir.

"Q. Did it hit the rail at all?

"A. No, sir.

"Q. Will you swear, then, that your crosstie didn't hit the rail or any other crosstie along the rail?

"A. No, sir, it never hit nothing.

"Q. Then the falling of your crosstie had nothing to do with the rail falling?

"A. No, sir. I had been working with these same men most of the time for 18 months, doing the same kind of work, but had never carried crossties across rails jacked up before. I did not help to jack the rails up, but knew they were jacked up. At the time I put my foot under the rail I was walking across with a tie and just stepped under it. The rail fell and I dropped my end of the tie.

"Q. You mean to say the rail fell before you dropped your end of the tie?

"A. Yes, sir.

"Q. You were not looking at the rail, were you?

"A. I was looking at my tie."

We are of the opinion, and so hold, that under the allegations of negligence the evidence, viewed in the light most favorable to the plaintiff, was sufficient to carry the case to the jury upon the issue of the defendant's actionable negligence.

The evidence of the plaintiff does not establish such contributory negligence as would justify the court in holding as a matter of law that the plaintiff's action was barred thereby.

The contention of defendant that, upon the plaintiff's own evidence, the plaintiff assumed the risk of being injured in the manner and way in which he was injured is untenable. "The doctrine of assumption of risk is dependent upon the servant's knowledge of the dangers incident to his employment and the ordinary risks he is presumed to know. But extraordinary risks, created by the master's negligence, if he knows of them, will not defeat a recovery, should he remain in service, unless the danger to which he is exposed thereby is so obvious and imminent that the servant cannot help seeing and understanding it fully, if he uses due care and precaution, and he fails, under the circumstances, to exercise that degree of care for his own safety which is characteristic of the ordinarily prudent man." *Pigford v. R. R.,* 160 N. C., 93; *Cherry v. R. R.,* 174 N. C., 263. The danger to which the plaintiff was exposed, under the evidence in this case, cannot be said to be "so obvious and imminent" that he could not help seeing and understanding it. The danger was more or less latent, and the evidence does not justify the

LOFLIN v. R. R.

court in holding as a matter of law that the plaintiff realized, or by the exercise of reasonable care could have realized, it before the injury occurred.

The judgment of the Superior Court is
Reversed.

BARNHILL, J., dissenting: There are three reasons why I cannot concur in the majority opinion of the Court in this case.

1. In carrying the new crossties from the place where they were piled to the point where they were to be used in replacing old crossties, the plaintiff and his fellow servants who were carrying the crossties, could have crossed the track at the point where the new crossties were piled and then proceeded up' the east side of the track to the point where they were to be used. Instead, they walked up the west side of the track and crossed at the point where the rails were jacked up. The plaintiff had the choice of two ways. Instead of taking the one that was safe he followed the way that involved danger.

2. The section crew at the time of this accident was engaged in repairing the defendant's railroad track by removing old crossties and replacing them with new ones. The usual and customary manner in which this work is done is to jack up the rail. This is a necessary part of the work. Any danger connected therewith is naturally incident to the employment and the employee assumes all danger which is naturally incident to the work he is employed to do.

3. There is no evidence of negligence. The only evidence with respect thereto is the statement of the plaintiff to the effect that "the jack was not under it right." He testified that he did not help put the jack under the rail and he does not testify that he saw it after the rail was jacked up. His statement is a conclusion, pure and simple. Was the head of the jack only partially under the rail in such manner that it would slip off? As to this, no witness speaks. Was the base of the jack placed upon an insecure foundation, so that it slipped and caused the rail to fall? As to this, the record is silent. Did some other employee strike the handle of the jack and cause it to fall? We are not told. Was the catch on the jack defective or insecurely fixed, by reason of which the rail fell? No witness undertakes to say. For the jury to find that the defendant was negligent, upon the evidence in this record, it would have to enter the field of surmise and conjecture. If the plaintiff did not know and does not undertake to tell us in what respect "the jack was not under it right," how could the jury tell, and how are we to say that his conclusion is correct?

In my opinion the judgment of nonsuit entered in the court below should be sustained.

WINBORNE, J., concurs in dissent.